

**SO ORDERED.**

**SIGNED this 13 day of June, 2011.**

_____
**JAMES D. WALKER, JR.
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | CASE NO. 10-53880-JDW |
| JOHN L. RUCKER, JR. &, | ) | |
| MICHELE L. PENNINGTON, | ) | |
| | ) | |
| DEBTORS. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

COUNSEL

For Debtors:        Jason M. Orenstein
                    Post Office Box 4086
                    Macon, Georgia 31208

For U.S. Trustee:   Amber Bagley
                    440 Martin Luther King Jr. Blvd., Suite 302
                    Macon, Georgia 31201

## MEMORANDUM OPINION

This matter comes before the Court on the United States Trustee's motion to dismiss. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(O). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtors John Rucker and Michele Pennington filed a Chapter 7 petition on November 18, 2010. On the petition, under the section "Nature of Debts," Debtors checked a box indicating their debts are primarily business debts. On the Chapter 7 Statement of Current Monthly Income and Means-Test Calculation, Debtors checked box 1B, declaring their debts "are not primarily consumer debts." They reported total debts of $937,194. Of that amount, $189,960 is student loan debt incurred by Ms. Pennington while earning a medical degree. The United States Trustee filed a motion to dismiss pursuant to 11 U.S.C. § 707(b) based, in part, on the contention that Debtors' debts are primarily consumer in nature.

The Court held a hearing on the motion on May 16, 2011. The Court took under advisement the question of whether a per se rule applies to categorize student loans as either consumer or nonconsumer debts. After considering the parties' arguments and legal citations, the Court concludes that a per se test is inappropriate. Instead, each debt, including each student loan debt, must be evaluated according to its purpose.

### Conclusions of Law

Under 11 U.S.C. § 707(b)(1), the Court may dismiss or convert an individual's Chapter 7

case if the debtor has "primarily consumer debts" and "the granting of relief would be an abuse" of Chapter 7. Congress enacted § 707(b) "to address the problem of consumer debtors taking inordinate advantage of modern easy-credit practices, running up consumer debt, and then seeking discharge of that debt through Chapter 7," and to give courts a means for dismissing such cases. Stewart v. United States Trustee (In re Stewart), 175 F.3d 796, 812-13 (10th Cir. 1999). The United States Trustee contends Debtors' debts are primarily consumer debts. Debtors contend their debts are primarily nonconsumer debts. The parties agree that the characterization of Debtors' student loans will determine whether their total debts are primarily consumer or primarily nonconsumer debts.[1] This opinion is limited to the question of whether student loans are subject to a per se characterization as either consumer or nonconsumer debt. Any other disputed issues will be decided separately.

      The Bankruptcy Code defines consumer debt as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). The Trustee argues student loans may be treated as per se consumer debt because education is a benefit inherently personal. It is instilled in a person's mind; it can never be separated from the person. See In re Stewart, 201 B.R. 996, 1004 (Bankr. N.D. Okla. 1996); In re Millikan, No. 07-01759-AJM-7, 2007 WL 6260855, at *5 (Bankr. S.D. Ind. Sept. 4, 2007). Debtors, on the other hand, analogize student loans to income tax debt, which they contend is always categorized as nonconsumer debt in bankruptcy. See In re Brashers, 216 B.R. 59, 60 (Bankr. N.D. Okla. 1998); Internal Revenue

---

[1] If the debts in this case are primarily consumer debts, the attorney for the Trustee also must show the case is an abuse of Chapter 7 to succeed on her motion. Under 11 U.S.C. § 707(b)(2), a case is presumptively abusive if the debtor's income, as calculated by the means test, exceeds a certain threshold. Debtors do not dispute that the Trustee can establish the abuse element of § 707(b).

3

Service v. Westberry (In re Westberry), 215 F.3d 589, 591 (6th Cir. 2000) (holding income tax debt is not consumer debt for purposes of the co-debtor stay under 11 U.S.C § 1301). The Court finds neither party's position persuasive.

While the Trustee cited no cases expressly holding all student loans are consumer debts as a matter of law, both Stewart and Millikan come close to doing so. Both cases arose in the context of § 707(b) and raised the question of whether student loans are consumer debt. The court in Millikan relied heavily on the bankruptcy court opinion in Stewart, quoting it extensively. Thus, the two courts relied on the same essential rationale in holding the student loans at issue were consumer debts. Stewart, 201 B.R. at 1005; Millikan, 2007 WL 6260855 at *7.

The courts first addressed themselves to the purpose of § 707(b), which Stewart described as identifying "an individual debtor who voluntarily ... takes advantage of modern easy-credit practices to accumulate debts, for the immediate purpose of satisfying his private appetites and maintaining or enhancing his personal qualities and lifestyle[.]" Stewart, 201 B.R. at 1004; Millikan, 2007 WL 6260855 at *3. Because the debtor consumes or assimilates the benefits, the creditor is left with little security. Id. Next the courts considered whether student loans fit within that construct and concluded that they do. According to Stewart, student loans enable a debtor to receive and retain a benefit (education) that "cannot be conserved as security for payment of the debt." Id. Often, that education leads to a higher salary that the debtor can retain for his own benefit, "especially if he uses bankruptcy to cancel his creditors' right to use *in personam* debt collection methods. In effect, the student borrower gets 'personal' benefits while avoiding

'personal' payment. This scenario differs from the credit-card binge only in incidental details."[2] Id.

Having decided that individuals who leverage education into high-income careers are the type of debtors targeted by § 707(b), the courts turned to the question of whether the debtors' student loans were consumer debt or nonconsumer debt. The profit-motive test is commonly used to distinguish consumer debt from nonconsumer debt. Millikan, 2007 WL 6260855 at *4 (citations omitted). Under this test, debts without a profit motive are considered consumer debts. Id. Stewart considered the test, but found it unhelpful–especially to debtors trying to prove their loans are nonconsumer debts. 201 B.R. at 1004-05. The debtor in Stewart, for example, used a significant portion of his loans for living expenses. Furthermore, he claimed he pursued a medical education for humanitarian reasons rather than for the income benefits. Id. at 1005. The court in Millikan also found the profit-motive test unworkable when applied to student loans. Notably, it concluded the test would lead to an absurd result requiring the court "to analyze the utility of every class taken and every book purchased with respect to the degree earned." Id. at *5. For example, the court would have to decide whether the portion of student loans used to pay for elective classes unrelated to the student's major were incurred with a profit motive. Id. Furthermore, the test would disproportionately and absurdly benefit those who borrow large sums to finance expensive professional degrees–such as doctors and lawyers. Id. at *6. If their substantial student loans are treated as nonconsumer debts under a profit-motive test, they can

---

[2] Unlike credit card debt, qualified student loans are generally nondischargeable in bankruptcy. 11 U.S.C. § 523(a)(8). Consequently, the student loan creditor's "right to use *in personam* debt collection methods" usually remains safely intact. However, in Stewart, the majority of the loans were provided by relatives. 201 B.R. at 997. In such circumstances, § 523(a)(8) is unlikely to protect the creditor from the effects of discharge.

avoid dismissal or conversion to Chapter 13 even though their high salaries put them in a better position to repay creditors than those with smaller student loans used to obtain a less specialized and less financially rewarding education. Id.

Having rejected the profit-motive test, the court in Millikan summarily found "that the Disputed Student Loan Debt is in the nature of consumer debt." Id. at *7. It never indicated what test, if any, it applied in place of the profit-motive test to reach this conclusion. However, the court did state that granting Chapter 7 relief to a debtor with no dependents, an annual salary of $177,000, a monthly car payment of $1,248, a monthly rent payment of $1,700, and an ability to pay as much as $3,000 per month toward student loans would conflict "with BAPCPA's lofty goals of personal fiscal responsibility and repayment to creditors by financially able debtors." Id. *6.

Stewart likewise failed to articulate a specific test for evaluating student loans, but the court did inquire into their nature. 201 B.R. at 1005. "Nothing is more intimately 'personal' than the debtor's own education–what goes, so to speak, between the debtor's own ears. Debts for loans which further that 'personal' endeavor ... come within the literal terms of 'consumer debt[.]'" Id. In addition, the court found no reason to distinguish the portion of loans used to pay educational expenses from the portion of loans, if any, used to pay living expenses. "either way, the money is used to enable the debtor to acquire further education." Id. at 1004. Thus, the court announced a rule that "student loans in general should be treated as 'consumer debt,' at least *absent unusual facts or factors*[.]" Id. (emphasis added).

The Stewart decision was affirmed by the 10th Circuit Court of Appeals. Stewart v. United States Trustee (In re Stewart), 175 F.3d 796, 806 (10th Cir. 1999). However, the circuit court

6

declined to apply a per se rule to the categorization of student loans. Id. at 806 (rejecting the debtor's argument that consumer loans are per se nonconsumer debt). Instead, it examined the purpose of the loans. Id. at 806-07. In doing so, it held that to the extent the loans were used to pay for family expenses, they "fairly may be characterized as 'consumer debts.'" Id. at 807. Because a substantial amount of the debtor's student loans had been used for family purposes, the court did not have to categorize amounts spent on educational expenses to conclude that the debtor's debts were primarily consumer debt. Id. However, the circuit court did acknowledge that "little or no binding or persuasive authority exists to help us determine the characterization of educational expenses such as books, tuition, and room and board as either consumer or business debt." Id.

The Court finds Stewart and Millikan unpersuasive for the proposition that student loans are per se consumer debt. In Millikan, the court did not announce any rule for evaluating student loans, although the court was significantly influenced by the bankruptcy decision in Stewart. Stewart held student loans should generally be categorized as consumer debt, but it acknowledged unusual facts may argue for a different result. Thus, while Millikan and Stewart offer strong arguments that, in the appropriate circumstances, student loans are properly categorized as consumer debt, they fall short of providing a basis for a per se rule.[3] This Court agrees that education confers a significant personal benefit, but it cannot conclude that such benefit is always the motivating factor for incurring the loan or the primary result of receiving an

---

[3] In addition to case law, the Trustee cited 26 C.F.R. § 1.162-5, an IRS regulation governing the income tax treatment of educational expenditures. The regulation provides for different tax treatment of such expenditures depending on the circumstances. Therefore, it offers no support for a per se rule for the characterization of student loans.

education.

The legal principle advanced by Debtors is likewise unpersuasive for establishing a per se rule in their favor. Debtors ask the Court to analogize student loans to income tax debt, which is categorized as nonconsumer debt in individual bankruptcy cases. Debtors cited no case law to support their argument. However, courts that treat income tax debt as nonconsumer debt in bankruptcy do so because income tax debt has certain unique characteristics that remove it from the scope of "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8).

In Westberry, the 6th Circuit Court of Appeals considered the definition of consumer debt in the context of 11 U.S.C. § 1301(a), which stays efforts to collect "a consumer debt" from a co-debtor. 215 F.3d at 590. At issue was whether the IRS could collect income taxes from the debtor's wife. Id. at 590-91. The court distinguished income tax debt from consumer debt in four ways. First, income tax debt is not voluntarily incurred. Id. at 591. Second, it is incurred for a public purpose rather than a personal, family, or household purpose. Id. Third, it results from earning activities rather than from consumption. Id. Fourth, it does not involve the extension of credit. Id. See also Brashers, 216 B.R. at 60 (concluding income tax liability is not consumer debt for purposes of § 707(b) because it "is not 'incurred' as part of a consumption activity, but is involuntarily imposed in the course of earning income."). None of these distinctions apply to student loans. Student loans are voluntarily incurred for a non-public purpose involving consumption of educational goods and services, and they necessarily require an extension of credit. Because student loans do not universally include traits that are inconsistent with the definition of "consumer debt" in § 101(8), the Court will not apply a per se rule that student

8

loans are nonconsumer debt.

## Conclusion

The Court concludes it cannot apply a per se rule to characterize student loan debts as consumer debt or nonconsumer debt under § 707(b). Instead, the Court must inquire into the purpose of the debt. Such an inquiry is consistent with the language of § 101(8), which defines consumer debt according to its purpose. Furthermore, the Court cannot conclude that all student loans are incurred for the same purpose. Instead, the Court must consider all facts relevant to purpose when the characterization of student loans is in dispute.

The Court will hold a trial on the Trustee's motion to dismiss to hear evidence in accordance with this Opinion. At the conclusion of the trial, the Court will enter an Order resolving the Trustee's motion.

END OF DOCUMENT